County of Erie, Appellant-Respondent, *v.* City of Buffalo, Respondent-Appellant.

Fourth Department, July 12, 1957.

*Elmer R. Weil, Maurice J. Rumizen* and *John S. Ryan* for appellant-respondent.

*John J. Naples, Corporation Counsel* (*William J. Ostrowski,* of counsel), respondent-appellant.

Bastow, J.   This appeal presents the question as to whether the City of Buffalo or the County of Erie has the right to impose a local tax upon transactions whereby third parties within the city purchase and consume gas, electricity, steam and refrigeration.   Since 1947 the county has imposed and collected, presumably for educational purposes, a sales tax at the rate of 1% on tangible personal property, and at least since 1948 has taxed, as such property, the sale of gas, electricity, steam and refrigeration.   In 1954 the city adopted a local law imposing, among other things, a 2% tax on consumers' bills for the same utilities.   The parties to this action for two years thereafter operated under a written agreement by the provisions of which the combined sales tax of 1% and consumers' utility tax of 2% were collected by the county and divided on the basis of one third to the county and two thirds to the city.   In 1956, however, the city enacted a local law imposing upon consumers' utility charges a tax of 3%; which

**is** the maximum amount that may be imposed thereon by one **or** more municipalities whether in the form of a utility tax **or** jointly as sales and utility taxes.

The county brought this action seeking a judgment declaring that it has a prior right to impose a 1% tax on the sales of these articles and invalidating so much of the city's local law as attempts to impose a utility tax in excess of 2%. The city by its answer seeks relief in similar form decreeing that it has the prior right to impose the full tax of 3% and asks that the county be restrained from collecting any sales tax on such transactions.

The contentions of the parties require a brief resume of the enabling statutes. In 1947 the Legislature authorized counties, outside of the city of New York, for educational purposes only, to adopt local laws imposing certain types of nonproperty taxes. One of these was a sales and compensating use tax at a rate not to exceed 2%. At the same time cities, within stated population limits, were authorized to impose certain specified nonproperty taxes and any of the taxes the county was empowered to levy "during such time as and to the extent that the county within which such city lies does not impose such tax." The statute went on to set up procedures to be followed by a county if it desired to pre-empt an area of taxation then occupied by a city. (L. 1947, ch. 278, §§ 1, 2.) The statute further provided in section 8 that moneys collected from taxes by a county should be paid to the several school districts therein while section 9 authorized a city to use the moneys collected for any city purpose.

Significant amendments were made to the enabling act in 1948 (ch. 651). A provision was inserted in section 1 defining the expression "tangible personal property" as used in the sales tax to include gas, electricity, steam and refrigeration. A new maximum 3% utility consumption tax was authorized by subdivision (c) of section 1. Since these amendments made it possible for both a sales tax and a consumers' utility tax to be imposed upon the same transaction there was for the first time the possibility of multiple taxation. Accordingly, the final sentence of subdivision (c) of section 1 provided (and still provides) that "If a tax is also imposed on any of the foregoing pursuant to paragraph (a) of this section, [the sales tax] the tax rates shall be adjusted as provided in section four of this act."

Thus, if a county imposed both a sales and a utility consumption tax upon the same transaction, section 4 came into play and it provided in part: "No transaction, which, as used in this

paragraph, shall include any privilege or use, shall be taxed pursuant to this act by any county or by any city located therein, or by both, at an aggregate rate in excess of the highest rate fixed by any single paragraph of section one. If a transaction is taxed by both a county and a city, the city tax rate on such transaction shall be deemed to be reduced (or the entire tax eliminated, if necessary) to the extent necessary to comply with the foregoing requirement."

This 1948 enactment continued the provision authorizing certain cities to impose the sales tax and other taxes authorized by section 1 but all of this was "subject to the provisions of section four" the pertinent portion of which has been heretofore quoted. Two observations should be made as to these provisions. First, where the same tax was levied by a county and a city contained therein, the county tax pursuant to section 4 had absolute priority and second, the last sentence of subdivision (c) of section 1 mandating an "adjustment" of the tax, if multiple taxation resulted from imposition of the sales tax and the consumers' utility tax, was not designed to raise any question of priority. In other words, as the law then stood, there could be no such question, because any conflict between a city tax and a county tax by mandate of the statute was reconciled in favor of the latter. On the other hand, if either municipality attempted to impose two taxes (sales and utility consumption) at a collective rate in excess of 3%—the highest rate permitted by any single subdivision of section 1—then each rate would be reduced or adjusted to comply with section 4. If, however, both city and county attempted to impose a multiple tax in excess of the collective rate there would be no "adjustment". By the plain language of section 4, in such a case the rate imposed by the city would be "reduced" or "eliminated, if necessary" while the county tax, supported by an absolute priority, would remain unchanged.

Two years later this statute was radically changed. This was brought about through studies made by the State Comptroller's Committee on Local Non-Property Taxes appointed by that official in November, 1949. The work of the committee culminated in a written report recommending legislation in 10 different areas of this field of taxation. We are here concerned with recommendation numbered six. After reviewing the then provisions of the law providing that a county might pre-empt a tax which was being imposed by a city it was stated that the purpose of the recommendation was to give cities and counties the right to impose certain nonproperty taxes with assurance that the other unit would not pre-empt the tax.

Insofar as we are here concerned it was specifically recommended (Report, March 6, 1950, p. 9) as follows: " A. Counties be given prior right to tax (1) motor vehicle use, (2) privilege of selling alcoholic beverages at retail, and (3) coin operated amusement devices; B. Cities be given prior right to tax (1) restaurant charges of one dollar or more, (2) consumers' utility bills, (3) admissions, and (4) hotel room occupancy; C. Counties and cities each be given a prior right to one half of the rate of the retail sales and business privilege taxes for their own purposes."

The following year the Legislature implemented these recommendations (L. 1950, ch. 589). Section 4 was amended to provide in part that " No transaction, which, as used in this paragraph, shall include any privilege or use, shall be taxed pursuant to this act by any county or by any city located therein, or by both, at an aggregate rate in excess of the highest rate fixed by any single paragraph of section one of this act. If a transaction is taxed by both a county and a city, the rate of the tax on such transaction imposed by the county or city not having prior right thereto shall be deemed to be reduced (or the entire tax eliminated, if necessary) to the extent necessary to comply with the foregoing requirement."

This section then went on in the third paragraph thereof to create a system of priorities, as recommended by the Comptroller's committee. In considering the contentions of the parties to this action both form and substance of the statute become important so the pertinent portions are quoted:

" Where a county contains one or more cities, the county shall have prior right to impose:

" 1. Taxes described in paragraphs (d), [privilege of selling liquor] (f) [privilege of owning coin operated amusement devices] and (g) [motor vehicle use] * * * and

" 2. Taxes described in paragraphs (a) [sales and compensating use] and (h) [privilege of doing business] of section one of this act to the extent of one-half the maximum rates authorized by such paragraphs, except as otherwise provided in this section.

" Each city in such a county shall have prior right to impose:

" 1. Taxes described in paragraph (b), [restaurant receipts] (c), [consumers' utility bills] (e) [admissions and charges for entertainment] and (i) [hotel room occupancy] of section one of this act, and

" 2. Taxes described in paragraphs (a) and (h) of section one of this act to the extent of one-half the maximum rates

authorized by such paragraphs, except as otherwise provided in this section. * * *

" For the purposes of this section the term ' prior right ' shall mean the preferential right to impose any tax described in section one of this act and thereby to pre-empt such tax and to preclude another municipality from imposing or continuing the imposition of such tax to the extent that such right is exercised."

Section 4 contains a further provision that where a county imposes a sales tax for both county purposes and for educational purposes for allocation and distribution to cities and the area outside cities, the county shall have the prior right to impose the tax for each of these purposes at one third the maximum rate. In such event the city has a prior right to impose the tax at one third the maximum rate.

When the report of the Comptroller's committee and the 1950 amendments are considered together there emerges a clear and definite pattern. Prior to 1950 a city or county might impose a sales tax of not to exceed 2% and a consumers' utility tax of not to exceed 3% but a county might at any time pre-empt the field of either tax and force a city to reduce its tax or, if necessary, abandon it entirely if the county tax rate equalled the permissive maximum. The 1950 amendment, insofar as we are here concerned, made two decisive changes. First, it gave a county and a city both the right to impose the sales tax to the extent of one half the maximum rate with the proviso that under certain circumstances, not here present, the county could impose the tax to the extent of two thirds of the maximum.

On the other hand a county was given the prior right to impose three specified nonproperty taxes and a city was empowered to impose four named taxes. Each of the seven was a separate and distinct type of tax. One of the taxes a city was given the prior right to impose was the consumers' utility tax. The Legislature must have recognized that some counties, such as plaintiff, were collecting a sales tax on this same transaction so it defined " prior right " to mean the preferential right to impose any tax described in section 1 and thereby to preclude another municipality from imposing or continuing the imposition of the tax to the extent that the municipality having the prior right has exercised it.

At the same time no attempt was made to prohibit either a city or county from imposing any of these nonproperty taxes so long as the one having the prior right had not entered that specific area of taxation. Thus, we find that either mu-

nicipality could impose the tax upon consumers' utility charges provided the total tax did not exceed 3%. Moreover, the consumption of these utilities could be taxed as a sale and as a consumers' charge so long as the total tax did not exceed 3%. Specifically, if a county imposed a 2% tax on the sale of utilities and subsequently a city imposed a 2% consumers' utility tax then the imposition of both taxes on the same utility transaction would result in an illegal rate (exceeding 3%) and the question would be presented as to how the conflict should be resolved. Prior to 1950, as we have seen, the city tax, upon the hypothetical facts stated, would have been reduced to 1% because the city enjoyed no tax priorities of any description and the county had an absolute right to pre-empt any field of taxation. The county maintains that the same result must now obtain but, it seems to us, that this overlooks the fact that the 1950 amendments expressly gave the city the prior right to levy the utility tax and imposed no exception or limitation upon that right. At the same time the Legislature took away the county's absolute priority with respect to the sales tax and substituted a fractional priority shared with the city on an equal basis and then subjected that partial priority to the words '' except as otherwise provided in this section.'' One such exception appears in next to the last paragraph of section 4 where under a certain factual situation the county's share of the sales tax may be increased to two thirds thereof and the city's share reduced to one third.

In summary, when the legislative amendments of 1950 are read in the light of the report of the Comptroller's committee it is apparent that the possibility of conflict between city and county had been foreseen. It was resolved by (1) conferring upon the city the prior right to levy the utility consumption tax, among others, and (2) taking away the county's exclusive sales tax priority and placing the city and county on an even plane except that certain counties had prior right to impose a sales tax for county purposes at rates not to exceed one third of the maximum and a similar tax for educational purposes at the same rate. In such event, a city was relegated to the remaining one third of the maximum rate.

The county presents other contentions in an attempt to persuade us to reach a contrary finding but we conclude they are without validity. Thus, the county argues that the 1947 enactment shows a legislative intent to assure to school districts adequate financial assistance from the imposition of a sales tax by the county. We embrace the premise but this ignores the 1949 study of the Comptroller's committee and its recom-

mendations to take away from the counties their right to pre-empt not only the area of the sales tax but all other authorized nonproperty taxes. The Legislature by following these recommendations has shown a precise intent* (a) to divide between county and city certain fields of taxation and (b) to permit the municipalities to equally share the sales tax. Then the county argues that prior in time or prior on the printed page is prior in right. But the Legislature has defined the priorities without incorporating any such test. Plaintiff also urges that by originally levying the utility tax at 2% the city acknowledged that it could not legally exceed that rate. Assuming that to be so, it should not persuade us, absent any claim of laches or estoppel, to adopt what we believe to be an erroneous interpretation of an important statute.

Lastly, the county asserts that the city's local law was adopted without complying with certain statutory requirements that the plaintiff claims were in substance a condition precedent. It is conceded by both parties that through the years the sales taxes collected by the county have been distributed to school districts within the county. It is alleged in the complaint that no written notice of the enactment of the 1956 local law was given by the city to the school districts within the county. The city in its answer by failure to deny has admitted this allegation but alleges that the giving of written notice was not required. The county claims that if it is prevented from collecting a sales tax upon utilities this will result in a reduction of revenue to the school districts within the meaning of the statutory provision. Such a contention if sustained, obviously could only postpone the effective date of the city's enactment. In our opinion, however, the notice was not required.

While the original enactment (L. 1947, ch. 278) authorized the imposition of these taxes for educational purposes only this limitation was removed the following year and provision made for allocating the taxes if collected for both educational and noneducational purposes (L. 1948, ch. 651, § 11). This section 11 was amended in subsequent years (L. 1950, ch. 589; L. 1951, ch. 811; L. 1952, ch. 811). The pertinent provision is now found in subdivision (e) of section 11 and provides in substance that written notice to the school districts is required (1) by a county which desires to reduce the portion of net tax proceeds set aside for educational purposes or (2) by a city under 125,000 which is authorized by section 3-b (as added by L. 1951, ch. 811, § 2) to impose for the benefit of school districts within the city any tax enumerated in section 1 except the consumers' utility tax. As to a city or county falling within these classi-

fications the notice is required to be served at least six months before the commencement of the fiscal year of the school district. We construe this provision to relate to (1) the allocation and distribution of the tax moneys by a county and not to the imposition of the tax and (2) to the elimination by certain cities of a tax previously imposed and collected for the sole benefit of school districts.

When we turn to the limitation upon the right to impose the tax we find in section 4 a suitable provision that " city tax upon any transaction, to the extent that it would require a reduction in any county tax rate thereon, shall not become effective in respect of any transaction taxed by such county before the commencement of the county's next succeeding fiscal year and then only if the city shall have given notice to such county of its imposition of a tax on such transaction at least six months prior to the commencement of such fiscal year ". There is no claim that the city did not comply with this provision.

The conclusion here reached is fortified by the recommendations of the Comptroller's committee. At page 10 of its report the committee suggested that at least six months' notice should be given by the municipality seeking to exercise its prior right and pre-empt an area of taxation. This notice, however, was only to be given to the other municipality. As to notice to the school district beneficiaries it was recommended that a similar six months' notice be required "in the event of intention to discontinue apportionment of a tax to cities and the outside areas or distribution of a tax to school districts." This has been implemented in section 11 with the fiscal year of the school district substituted for the six months' period. We conclude that the city was only required to notify the county and not the various beneficiaries of the county's tax.

The judgment and order appealed from should be modified and declaratory judgment granted in favor of the defendant.

All concur. Present — McCurn, P. J., Vaughan, Kimball, Williams and Bastow, JJ.

Judgment and order modified on the law, in accordance with the opinion and as modified affirmed, without costs of these appeals to either party.